FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ AUG 06 2009
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ALI LOVE,

                Petitioner,

     - against -

JOSEPH T. SMITH, Superintendent,
Shawangunk Correctional Facility,

                Respondent.
------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

CV-08-3746 (BMC)

**COGAN**, District Judge.

This matter is before the Court on petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. For the reasons set forth below, the Court dismisses petitioner's petition.

## BACKGROUND

On June 26, 1999, Antwon Washington was stabbed with an ice pick. Emergency Medical Technicians ("EMTs") transported Washington to Woodhull Hospital ("Woodhull") where physicians performed exploratory laparoscopic surgery to examine his abdominal and thoracic cavities. Surgeons did not find a puncture wound to the heart, but did find blood in his pericardium.

On June 29, 1999, Washington was transferred to Downstate Medical Center ("Downstate"). He died on July 1, 1999, directly after mitral valve replacement surgery. The performing surgeon, Dr. Anukware Ketosugbo, concluded that the cause of death was endocarditis, a bacterial infection of the heart. Dr. Pierre-Marie Charles performed an autopsy

on July 2, 1999, during which he discovered two stab wounds to Washington's upper abdomen and two to his lower left chest and lower right abdomen. Dr. Charles recorded that the puncture wound to the left side of Washington's chest was superficial, as it did not penetrate the pectoralis. Nevertheless, he determined that two stab wounds to the heart caused Washington's death.

Petitioner fled the scene after the altercation and remained a fugitive for nearly three years. After his arrest in March 2002, petitioner was charged with two counts of murder in the second degree, manslaughter in the first degree, and criminal possession of a weapon in the fourth degree. Petitioner was subsequently also charged with assault in the first degree, attempted assault in the first degree, two counts of assault in the second degree, and assault in the third degree.

At trial, Rockell Fayall, Latoya Fayall, and Dondraya Washington each testified that they were in the room with petitioner and Washington during the altercation and that they witnessed petitioner assault Washington with an ice pick. The EMTs who initially treated Washington testified that he was combative and refused treatment; they inferred that his behavior was an indication of internal bleeding. The EMTs stated that they observed marks on Washington's skin consistent with puncture wounds from an ice pick.

Dr. Marie Macajoux, a forensic pathologist and the acting deputy chief medical examiner of Kings County, testified at trial that the actual cause of death was a puncture wound to the left chest which penetrated the heart.[1] Dr. Macajoux stated that while examining the preserved heart, she discovered a fibrin[2] on the left side; she then cut through the outer wall of the heart and

---

[1] Prior to testifying, Dr. Macajoux reviewed Dr. Charles' autopsy reports, Washington's medical records from Woodhull and Downstate, and Washington's preserved heart, and spoke with Dr. Ketosugbo.

[2] A fibrin is a coagulated component of blood attached to the inside of the heart.

2

found a new puncture track in a previously unadulterated section. Dr. Macajoux testified that neither of the prior surgeries could have created this wound because: (1) the wound resulted from a long thin pointed instrument, which was not used in the initial surgery at Woodhull; and (2) fibroblasts (white blood cells which do not appear at a wound site until four to five days after creation of a wound) were present, making it impossible that the surgery at Downstate produced the incision, as Washington died immediately following that operation. Additionally, the incisions made during the second surgery at Downstate were in a different section of the heart. Dr. Macajoux further stated that Dr. Charles could have missed this puncture wound during the autopsy due to its small size and the amount of bleeding during surgery.

Dr. Macajoux also testified that the cause of death was neither Dr. Ketosugbo's conclusion of endocarditis nor the two puncture wounds identified by Dr. Charles. First, Washington could not have died from endocarditis because he neither exhibited the requisite symptoms of infection, such as a high fever, nor had bluish bacteria in the puncture wound. Second, the two incisions Dr. Charles identified were long and shallow, consistent with a scalpel, as opposed to narrow and deep, which would be consistent with an ice pick.

Dr. Macajoux further testified that Washington's preserved heart weighed 630 grams, roughly 280 grams larger than an average heart. However, she concluded that this pre-existing condition could not have caused his death. Dr. Macajoux testified that an enlarged heart is normal for a young muscular man, such as Washington, and that further enlargement was not unusual considering the two prior surgeries, blood vessel congestion, and edema.[3]

The jury convicted petitioner of manslaughter in the first degree, and petitioner was sentenced as a predicate violent felony offender to twenty-three years in prison. Petitioner

---

[3] An edema is an observable swelling from fluid accumulation in body tissue. See "Heart Failure Health Center: Edema," at http://www.webmd.com/heart-disease/heart-failure/edema (last visited August 04, 2009).

appealed his conviction; the Appellate Division unanimously affirmed the conviction; and the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Love, 830 N.Y.S.2d 723 (2d Dep't 2007); leave to appeal denied by People v. Love, 9 N.Y.3d 847, 840 N.Y.S.2d 773 (June 11, 2007) (Table). Petitioner *pro se* timely filed the instant § 2254 petition for a writ of habeas corpus on August 27, 2008.[4]

## DISCUSSION

Petitioner has asserted six grounds for habeas relief: (1) he received ineffective assistance of trial counsel; (2) the evidence was insufficient to prove he caused Washington's death; (3) the evidence was insufficient to prove he intended to inflict serious physical injury on Washington; (4) the reasonable doubt charge given at trial erroneously established a lower standard of proof; (5) the justification defense charge given at trial was erroneous and precluded petitioner from receiving the benefit of the defense; and (6) the prosecutor's summation violated petitioner's right to due process.

### I. Petitioner's ineffective assistance of trial counsel claim is meritless

Petitioner alleges that his attorney's performance during trial violated his Sixth Amendment right to effective assistance of counsel because counsel: (1) failed to move to dismiss based on insufficient evidence of causation; (2) failed to move to dismiss based on insufficient evidence of intent to inflict serious harm; (3) failed to object to the erroneous reasonable doubt charge; and (4) failed to object to the erroneous justification defense charge.

The Second Department ruled on the merits that petitioner received "meaningful representation." Love, 830 N.Y.S.2d at 724-25. Therefore, under 28 U.S.C. § 2254(d), the Court must decide whether the state court's determination of this claim was contrary to or an unreasonable application of the ineffective assistance standard established in Strickland v.

---

[4] Petitioner filed this case *pro se*, but then obtained representation thereafter.

4

Washington, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984). See also Williams v. Taylor, 529 U.S. 362, 384-85, 390-91, 120 S.Ct. 1495 (2000).

Under Strickland, petitioner must prove that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. To prove counsel's performance was objectively unreasonable, petitioner must surmount "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. It is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect" on the outcome. Id. at 693.

### A. Counsel's failure to dismiss based on insufficient evidence of causation and intent to inflict serious physical injury

Petitioner argues that trial counsel provided ineffective assistance because he failed to move to dismiss based on insufficient evidence of causation and intent to inflict serious physical injury. A petitioner seeking relief based on insufficient evidence must meet a high legal threshold. The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979) (emphasis in original). All inferences must be drawn in favor of the prosecution. See Fama v. Commr. of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

In considering the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime."[5] Quartararo v. Hanslmaier,

---

[5] The validity of petitioner's federal ineffective assistance of counsel claim for failing to move to dismiss based on insufficiency of the evidence depends upon whether the evidence was sufficient under New York state law. See Fore v. Ercole, 594 F.Supp.2d 281, 305 (E.D.N.Y. 2009) (holding that trial counsel was not ineffective for failing to preserve an insufficiency of the evidence claim when the evidence was sufficient under state law in effect at the time of petitioner's state trial); Holley v. Phillips, No. 03 Civ. 1852, 2008 WL 2938043, at *5-7 (E.D.N.Y. July 28, 2008)

5

186 F.3d 91, 97 (2d Cir. 1999). In New York, "[a] person is guilty of manslaughter in the first degree when [] [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person[.]" N.Y. PENAL LAW § 125.20(1) (McKinney 2009). The prosecution must "prove that the defendant's conduct was an actual cause of death, in the sense that it forged a link in the chain of causes which actually brought about the death," and that defendant's actions were a "sufficiently direct" cause of the death. People v. Stewart, 40 N.Y.2d 692, 697, 389 N.Y.S.2d 804 (1976). "Intent may be inferred from conduct as well as the surrounding circumstances." People v. Steinberg, 79 N.Y.2d 673, 682, 584 N.Y.S.2d 770 (1992). The question is "whether the jury, considering the act and all the surrounding circumstances, could conclude that there was no reasonable doubt" that the defendant acted with the prerequisite intent. People v. Bracey, 41 N.Y.2d 296, 301, 392 N.Y.S.2d 412 (1977).

Viewing the record in its entirety, this Court holds that a rational trier of fact could have concluded beyond a reasonable doubt that Washington died as a direct result of petitioner's actions. Dr. Macajoux testified that a thin deep puncture wound to the chest by a long narrow instrument, which breached the pectoral muscle and pierced the heart, was the actual and sufficiently direct cause of death. Dr. Macajoux stated that the puncture wound on the left side of Washington's chest corresponded to the fatal track in his heart and concluded that Dr. Charles was mistaken when he determined that the wound was merely superficial. Dondraya Washington, Latoya Fayall, and Rockell Fayall each testified that they witnessed petitioner stab Washington with an ice pick – a long, narrow weapon that the jury could reasonably have

---

(same); see also Lopez v. Greiner, 323 F. Supp. 2d 456, 472-73 (S.D.N.Y. 2004) ("Resolution of [petitioner's ineffective assistance claim based on counsel's failure to move to suppress] requires a careful analysis of state law because the adequacy of counsel's performance, and the consequences of any dereliction - that is, the merits of [petitioner's] Sixth Amendment claim - depend on the substance of state search-and-seizure law.").

inferred was capable of causing a wound consistent with Dr. Macajoux's conclusion as to the cause of death.

Petitioner argues that conflicting medical evidence in the record is insufficient to establish that he caused Washington's death. However, contrary to petitioner's assertion, New York law is clear that conflicting medical evidence does not equate with insufficiency, because a rational juror is entitled to accept expert medical testimony when it is not "so baseless or riddled with contradiction that it [is] unworthy of belief as a matter of law." Matter of Anthony M., 63 N.Y.2d 270, 281, 481 N.Y.S.2d 675 (1984). In testifying as to the cause of Washington's death, Dr. Macajoux explained how the alternative purported causes of death were erroneous: (1) she explained that the wound could not have resulted from the two prior surgeries completed at Woodhull and Downstate; (2) she explicated why Washington could not have died from endocarditis; and (3) she ruled out the possibility that an enlarged heart could have caused death. Dr. Macajoux's explanation of the conflicting medical evidence was not baseless, and, consequently, the jury was entitled to accept it as a matter of law.

Additionally, viewing the act and the surrounding circumstances, the Court finds that a rational juror could have concluded beyond a reasonable doubt that petitioner intended to inflict serious physical injury on Washington. Rockell and Latoya Fayall both testified that petitioner stabbed Washington numerous times in his chest and back by repeatedly executing a downward thrust with the ice pick, which emanated from petitioner's shoulders and culminated in a forceful stabbing motion into Washington's body.

Petitioner has argued that the evidence is legally insufficient because of discrepancies between eyewitness testimony and the autopsy report concerning the number of times petitioner stabbed Washington. This assertion is without merit. Inconsistencies between eyewitness

testimony and expert medical testimony are issues of credibility, which should be "determined by the finder of fact . . . and not disturbed unless clearly unsupported by the record." People v. Cross, 257 A.D. 2d 663, 663, 685 N.Y.S.2d 91 (2d Dep't 1999); see also Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . [and] will not be overturned . . . unless objectively unreasonable in light of the evidence presented in the state-court proceeding."). Based on the record, a rational juror could have concluded that petitioner intended to inflict serious physical harm on Washington; therefore, this Court should not disturb the state court's prior credibility determination.

Having considered the evidence in the light most favorable to the prosecution, a rational trier of fact could have determined beyond a reasonable doubt that petitioner intended to – and did – cause Washington's death. Because the evidence was legally sufficient to convict, counsel did not err in failing to move to dismiss. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ( "failure to make a meritless argument does not amount to ineffective assistance"); Besser v. Walsh, No. 02 Civ. 6775, 2003 WL 22093477, at *35 (S.D.N.Y. Sept. 10, 2003) (trial counsel cannot be faulted for failure to raise a meritless sufficiency of the evidence claim).

### B. Counsel's failure to object to the reasonable doubt charge and the justification defense charge

Next, petitioner has asserted that his trial counsel provided ineffective assistance based on his failure to object to the reasonable doubt and justification defense charges given to the jury. The Second Circuit has held that if a jury instruction is "legally correct as given," trial counsel is not ineffective for failing to object. Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (stating further that "counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction

8

contained 'clear and previously identified errors.'"). Whether a jury charge is "legally correct" is determined under state law. See id. at 99-100 (analyzing identification instruction under state law and concluding that trial counsel did not unreasonably fail to object because the charge was correct as given); Prince v. Ercole, No. 08-CV-5197, 2009 WL 1172851, at *14-15 & n.11 (E.D.N.Y. May 1, 2009) (holding that trial counsel's decision not to challenge a jury instruction was "a legitimate strategic decision deserving deference" because the instruction was correct under state law).

### 1. *Reasonable doubt charge*

The fundamental component of criminal procedure in the United States is the standard of proof beyond a reasonable doubt, yet no court requires specific language in the jury instruction. Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994) ("[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used. . . .") (internal citations omitted); People v. Matthews, 221 A.D.2d 802, 803, 634 N.Y.S.2d 235 (3d Dep't 1995) ("[N]o particular wording is mandated when explaining this [reasonable doubt] concept."). To determine the adequacy of a reasonable doubt charge, the court "[does] not consider the challenged sentence alone and in a vacuum but instead must read the instruction as a whole to determine if it was likely to confuse the jury as to the proper burden of proof." People v. Fields, 87 N.Y.2d 821, 823, 637 N.Y.S.2d 355 (1995).

Here, the trial court initially instructed the jury that "the prosecution has the burden of proving defendant guilty, beyond a reasonable doubt, of each element of the crimes charged." The court added that the defendant has the benefit of the presumption of innocence, which envelopes the defendant throughout his trial, and "will remain with the defendant unless and

until you the jury, during the course of your deliberations . . . are satisfied as to one or more charges that guilt has been established, beyond a reasonable doubt." The court then stated:

> The presumption of innocence is neither disturbed nor overcome by mere suspicion, conjecture or even a probability that a defendant committed a crime. Another of the safeguards to which I have made reference relates to the burden of proof. The burden of proof, of proving guilt beyond a reasonable doubt rests at all times upon the prosecution and never shifts. No defendant is ever obliged, under our law, to prove his innocence. The right is a fundamental one firmly established in our law.
>
> Thus, if after evaluating all of the evidence you should find it is evenly balanced or you should find it is as consistent with innocence as it is with guilt, defendant must be acquitted as to such charge or charges. The standard once more is proof beyond reasonable doubt.
>
> That brings us to reasonable doubt and the meaning of that term. A reasonable doubt is an actual doubt that a jury is conscious of having, after reviewing all of the evidence in the case that was received on cross-examination as well as direct examination and each exhibit.
>
> If after having so reviewed the evidence you feel uncertain and not fully convinced that defendant is guilty of a crime charged, and if you believe that you are acting in a reasonable manner and that a reasonable person in any manner of like importance would hesitate to act because of such a doubt you are conscious of having, then a reasonable doubt exists.
>
> If you entertain such a reasonable doubt, the law directs you to give the benefit of that doubt to the defendant, in which event you will acquit him. The law does not require that guilt be established beyond all reasonable doubt or with a mathematical certainty. It is required that it be established, beyond a reasonable doubt. It cannot be the product of mere whim, guess or surmise, nor may it be resorted to as a subterfuge to avoid doing a disagreeable act.
>
> I repeat, a reasonable doubt is such a doubt as reasonable people may entertain after a careful review of all the evidence in the case. It must be found in reason. It must survive the test of reasoning or the mental process of reasonable examination. It is neither an imaginary nor an insubstantial doubt.

Petitioner has specifically challenged the following language in the jury instruction: "should [the jury] find [the evidence] evenly balanced or . . . as consistent with innocence as it is with guilt . . . defendant must be acquitted" (the "two-inference" language). Although New York

courts have noted that such language, considered in a vacuum, may be sufficiently confusing to require reversal, they have repeatedly refused to reverse when the improper phrase is included within an otherwise proper charge. See Fields, 87 N.Y.2d at 823 (holding that similar language would be improper if given in isolation because "a juror might interpret it to authorize a guilty verdict even if the People did not establish the defendant's guilt beyond a reasonable doubt," but ultimately finding that "the court's extensive, accurate instructions on the burden of proof and the concept of reasonable doubt safeguarded against such an impermissible inference"); People v. Mosley, 67 N.Y.2d 985, 987, 502 N.Y.S.2d 993 (1986) (holding the likelihood of juror confusion was not sufficient to require reversal where the trial judge made clear the degree of proof necessary to establish proof beyond a reasonable doubt).

    Viewing the instruction in its entirety, the Court finds that it was not reasonably probable that the jury misinterpreted the charge to permit a lower standard of proof, given the court's repeated references to the degree of proof necessary to establish proof beyond a reasonable doubt, petitioner's presumptive innocence, and the prosecution's burden to establish proof beyond a reasonable doubt in order to convict. The trial court initially instructed the jury that the prosecution had the burden of proving petitioner guilty beyond a reasonable doubt, and that he was presumed innocent until such guilt was established. The court then further substantiated the standard, stating that the presumption of reasonable doubt cannot be surmounted by "mere suspicion, conjecture, or probability." Following the language challenged by petitioner, the court instructed the jury that a reasonable doubt is an actual doubt and should the jury feel hesitant to act, then a reasonable doubt existed and they must acquit the petitioner. The court enunciated that a reasonable doubt need not be proven with mathematical certainty, but that it cannot be a "product of mere whim, guess, or surmise." Finally, the court emphasized in closing that a

reasonable doubt must be found in reason, surviving the mental process of reasonable examination. The entire instruction was more than sufficient to safeguard against the possibility that the jury would be confused as to the standard of proof needed to convict petitioner.

In United States v. Inserra, 34 F.3d 83 (2d Cir. 1994) and United States v. Khan, 821 F.2d 90 (2d Cir. 1987), upon which petitioner relies, the Second Circuit condemned two-inference jury charges, but upheld the specific reasonable doubt instructions at issue because in their entirety, they fairly conveyed proof beyond a reasonable doubt. See Inserra, 34 F.3d at 91 (finding jury instruction proper in spite of two-inference language where the trial court instructed the jury on the meaning of reasonable doubt and "emphasized several times that the Government had the burden of proving [defendant's] guilt beyond a reasonable doubt"); Khan, 821 F.2d at 92-93 (holding that although a two-inference charge by implication suggests a preponderance of the evidence standard and should not be used, the challenged charge was nevertheless sufficient because the judge instructed the jury several times on the meaning of reasonable doubt and specifically told the jury to acquit unless it was satisfied beyond a reasonable doubt).[6] Under the same reasoning, the Court in Flax v. Kelly, No. 99-CV-6123, 2003 WL 23350427, at *12-15 (W.D.N.Y. Oct. 6, 2003), the Court rejected a habeas challenge to a reasonable doubt instruction virtually identical to the one given here.

Because the reasonable doubt instruction was legally accurate as given, considering the context of the entire charge, petitioner's counsel was not ineffective for failing to object to the instruction. See, e.g., Aparicio, 269 F.3d at 99.

---

[6] Petitioner's reference to Gaines v. Kelly, 202 F.3d 598 (2d Cir. 2000) is inapposite. The Court of Appeals in that case reversed because it found that *seven* erroneous instructions in the reasonable doubt charge, considered in the aggregate, stripped petitioner of his constitutional right to due process. Id. at 605-10. Petitioner has not alleged an error of comparable magnitude in the jury charge given at his trial.

## 2. *Justification defense charge*

Second, petitioner argues that trial counsel provided ineffective assistance because he failed to object to the trial court's justification defense instruction. Specifically, petitioner has asserted that this instruction was improper because it did not order the jury to stop considering subsequent counts against petitioner if justification was found (the "stop-consideration language"). Petitioner argues primarily that People v. Feuer, 11 A.D.3d 633, 782 N.Y.S.2d 858 (2d Dep't 2004), a case in which the Second Department exercised its "interest of justice" jurisdiction to reverse in part because the court failed to include the stop-consideration language, is binding precedent. However, contrary to petitioner's argument, the various departments within the Appellate Division have not unanimously adopted Feuer, and the New York Court of Appeals has not required the use of the stop-consideration language. Therefore, the issue of whether the language is necessary in a justification defense charge remains unsettled.[7] Because there is no clear state rule on whether the stop-consideration language must be included, counsel's decision not to object to the justification charge did not constitute ineffective assistance, and this Court therefore cannot hold that the Second Department's ineffective assistance determination was either contrary to, or an unreasonable application of, the Strickland standard. See Aparicio, 269 F.3d at 99 (stating counsel's failure to object is unreasonably deficient performance only where the jury charge contains "clear" errors); see also Lopez, 323 F.Supp.2d at 480 (noting that where state law is unsettled in a given area, "the merits of a hypothetical . . . motion would hardly have been clear to a reasonably competent New York lawyer at the time of [petitioner's] trial," and further stating that petitioner could not establish

---

[7] See e.g., Feuer, 782 N.Y.S.2d 858, 859 (2d Dep't 2004) (second department adopting the rule and exercising "interest of justice" jurisdiction); (People v. Higgins, 591 N.Y.S.2d 612, 613-14 (3d Dep't 1992) (third department not expressly adopting the rule); People v. Bolling, 807 N.Y.S.2d 765, 767 (4th Dep't 2005) (fourth department rejecting the rule).

13

prejudice under Strickland where his counsel did not make a motion in an unclear area of state law, because petitioner could not demonstrate that the motion would have succeeded and that the result of his trial would have been different).

Furthermore, analyzing the justification defense charge in the context of N.Y. PENAL LAW § 35.15, it is evident that the trial court properly instructed the jury how to apply the defense in spite of the lack of stop-consideration language. The court initially stated:

> If you find each of the elements proven, beyond a reasonable doubt, in each instance, you must then go on to consider whether the defense of justification is applicable because before the prosecution is entitled to a verdict of guilty as to each of the murder charges, and indeed the assault charges, the prosecution must prove each of the elements alleged, beyond a reasonable doubt. And also must disprove the defense of justification or self-defense beyond a reasonable doubt.

The court then conveyed to the jury the elements of self-defense, after which it stated:

> If the prosecution has failed to convince you, beyond a reasonable doubt of those things, then you must find defendant acted in self-defense and find him not guilty of the crimes of murder, manslaughter and assault. Only if the prosecution convinced you, beyond a reasonable doubt, that defendant was not acting in self-defense, may you find him guilty of any of the murder charges, manslaughter or assault charges.

Next, the court proceeded to instruct the jury as to each individual charge, stating again that the jury must find petitioner guilty of that charge if the prosecution proved each element beyond a reasonable doubt and disproved the justification defense beyond a reasonable doubt. The court concluded by stating that a finding of guilty would conclude their deliberations, while a verdict of not guilty to an offense would require the jury to consider the following offense, for all charges to which the justification defense was applicable. This instruction, as given, is in accordance with New York revised pattern jury instructions, "which require that the absence of justification be made a specific element of each of the submitted charges." See N.Y. PENAL LAW § 35.15 (McKinney 2009); People v. Palmer, 34 A.D. 3d 701, 703-04, 826 N.Y.S. 2d 77 (2d

Dep't 2006) (stating that the rationale of Feuer is also served by charging in accordance with the revised pattern jury instructions).

Another court in this district recently found that a state court's failure to include the stop-consideration language is an insufficient ground for habeas relief where the justification defense charge instructs the jury to acquit should the prosecution fail to disprove the defense beyond a reasonable doubt – which the trial court expressly did in this case. Duncan v. Fischer, 410 F.Supp.2d 101, 112-14 (E.D.N.Y. 2006). In Duncan, after enumerating the elements of the four crimes with which petitioner had been charged, the court instructed the jury that "If the People fail to . . . convince you beyond a reasonable doubt [that the defendant did not act in self-defense], then you must find that the defendant acted in self-defense and find him not guilty." Id. at 113. The Duncan Court analyzed Feuer and the New York state precedent cited within that decision; it ultimately concluded that "[t]he trial court's instructions achieved the result mandated by Feuer . . . even if it did so with different words than [Feuer] suggest[s]." Id. at 114.

Petitioner has attempted to distinguish his case from Duncan, arguing that the trial court here did more than simply leave out the stop-consideration language, but rather eviscerated the justification defense by instructing the jury to consider the defense as to each individual charge. However, this argument is unconvincing. As set forth above, the charge properly instructed the jury how to apply the defense and expressly ordered the jury to acquit upon finding that the prosecution failed to disprove the justification defense beyond a reasonable doubt. Because the charge was in accordance with N.Y. PENAL LAW § 35.15, and because state law is unsettled as to whether it necessitates the Feuer stop-consideration language, the Court concludes that counsel was not ineffective for failing to object to this charge. See, e.g., Aparicio, 269 F.3d at 99.

## II. Petitioner's five substantive claims are procedurally barred

Next, petitioner has asserted the same five substantive grounds for habeas relief that he claimed before the Appellate Division: (1) the evidence was insufficient to prove he caused Washington's death; (2) the evidence was insufficient to prove he intended to inflict serious physical injury on Washington; (3) the reasonable doubt charge was erroneous and established a lower standard of proof; (4) the justification defense charge was erroneous and precluded petitioner from receiving the benefit of the defense; and (5) the prosecutor's summation violated petitioner's right to due process. Except for the justification defense claim, the Second Department held that petitioner's claims were unpreserved for appellate review under New York's contemporaneous objection rule, N.Y. CRIM. PROC. LAW § 470.05(2). Love, 830 N.Y.S.2d at 724-25. The court then analyzed these four claims under state law "in any event," and concluded that petitioner's contentions were meritless. Id. On the justification defense claim, the court simply stated that the claim was, "unpreserved for appellate review and, in any event, does not require reversal." Id.

According to the independent and adequate state ground doctrine, a federal court will not hear a habeas claim if the state court declined to address the claim due to petitioner's failure to meet a state procedural requirement. See Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991); see also Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (stating a procedural bar is adequate only if it is based on a rule that is "firmly established and regularly followed"). To determine if a state court's holding constitutes a procedural bar, federal habeas courts should "distinguish between two mutually exclusive categories of state-court decisions disposing of a federal claim: (1) state-court decisions that fairly appear either to rest primarily on federal law, or to be interwoven with federal law [and] (2) state-court decisions that fairly appear to rest

primarily on state procedural law." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006). If a state court has found that a claim is unpreserved for appellate review and then ruled "in any event" on the merits, this determination constitutes an adequate and independent procedural bar. Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Rush v. Artuz, No. CV-99-2840, 2009 WL 982418, at *5, n.5 (E.D.N.Y. Apr. 10, 2009) ("Where the state court has issued a holding that the claims 'were not preserved for appellate review, in addition to finding that they were, in any event, without merit,' then the procedural ground is an adequate and independent state ground that will bar federal review.") (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).

The Second Department ruled that petitioner's substantive claims – other than the justification defense charge – were unpreserved, expressly relying on New York's firmly-established contemporaneous objection rule. Thus, the Court finds that federal review of these four claims is procedurally barred as they fairly appear to rest primarily on state procedural law. See Jimenez, 458 F.3d at 138. Likewise, as to the justification defense claim, the Court concludes that the state court's determination constituted an adequate and independent procedural bar because the Second Department held that the claim was "unpreserved for appellate review and, in any event, does not require reversal." See Glenn, 98 F.3d at 724-25.[8]

Petitioner can surmount this procedural bar only if he is able to demonstrate cause for default and actual prejudice resulting from it, or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Petitioner has asserted that his trial counsel's ineffective assistance constitutes cause for his default; however, as set forth

---

[8] The Court rejects petitioner's argument that the Second Department's ruling on the justification defense claim was too ambiguous to be construed as adjudication "on the merits." The Second Circuit and at least one other district court have found that language similar to that used by the state court constitutes a merits determination. See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (stating "unpreserved, and, in any event, without merit" is a merits determination); Byron v. Ercole, No. 07 Civ. 4671, 2008 WL 2795898, at *7 (E.D.N.Y. July 18, 2008) (finding "no reversible error occurred" denotes a merits determination).

above, petitioner has failed to establish that counsel's assistance was ineffective. Petitioner has offered no other showing of cause, prejudice, or a fundamental miscarriage of justice, nor does the record give any indication that petitioner could make such a showing. Therefore, the Court cannot consider these five claims.

## CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this Order would not be taken in good faith. See 28 U.S.C. § 1915(a); Coppedge v. United States, 369 U.S. 438, 444, 82 S.Ct. 917 (1962).

**The Clerk of the Court is directed to mail a copy of this Order to petitioner *pro se*.**
**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
August 5, 2009